UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EREM INVESTMENTS, LLC                                    CIVIL ACTION

VERSUS                                                   NO: 06-4553

MARKEL INTERNATIONAL, ET AL.                             SECTION: "A" (3)

## ORDER AND REASONS

Before the Court is a **Motion for Partial Summary Judgment (Rec. Doc. 37)** filed by

defendant Markel International Insurance Company Limited ("Markel").  Plaintiff, Mohammad

Alabdalle ("Alabdalle"), opposes the motion.  The motion, set for hearing on March 19, 2008, is

before the Court on the briefs without oral argument. For the reasons that follow, the motion is

**GRANTED**.

## I.      BACKGROUND

The only claims remaining in this consolidated action are those of plaintiff Mohammad

Alabdalle against Markel arising out of Alabdalle's alleged claims under an insurance policy issued

by Markel.[1]

_____

[1]Counsel for the parties advised the Court that plaintiff EREM Investments, LLC and Markel settled their
claims, and the Court entered an Order of Partial Dismissal on February 14, 2008.  (Rec. Doc. 56).

The remaining dispute arises out of damages sustained by Alabdalle as a result of Hurricane Katrina.  On August 29, 2005, Alabdalle was leasing a building located at 3001-B General De Gaulle Boulevard, in New Orleans, Louisiana, wherein he was allegedly conducting business as General De Gualle Meat Market.  (Alab. Petition ¶ 2).  Alabdalle asserts that his business and its contents, including inventory, were damaged as a result of Hurricane Katrina.  (*Id.* at ¶ 3).  According to the Petition, "[a]t all times pertinent hereto, petitioner was insured by a policy of insurance issued by defendant."  (*Id.* at ¶ 4).  He avers that he submitted satisfactory proof of loss to Defendant on several occasions and made written demand for coverage.  (*Id*. at ¶ 5).  Alabdalle seeks damages for the full extent of policy coverage, along with statutory penalties and attorney's fees under La. R.S. §§ 22:658 and 22:1220.  (*Id.* at ¶¶ 9-10).

The policy in question was procured by Debralee Wolfe for her benefit and that of her husband Keith Wolfe ("the Wolfes"), as the owners of KDW Meats, LLC ("KDW").  At the time the policy was procured, the Wolfes operated two separate businesses from immovable property owned by KDW at 3001 General De Gaulle Boulevard: General De Gaulle Meat Market and Crescent Coffee Café.  (Pla. Supp. Mem. in Opp. p. 2).

On February 22, 2005, KDW leased 3001-B General De Gaulle to Alabdalle and sold all of the grocery store's inventory to him.  (*Id.*) (citing Pla. Exh. 5).  Subsequently, on June 28, 2005, KDW sold the building to EREM Investments, LLC ("EREM").  (*Id.*) (citing Pla. Exh. 6).  The Wolfes continued to operate Crescent Coffee Café under a lease with EREM.  (*Id.*)  Following the sale, Powell Insurance Agency ("Powell") provided evidence of commercial property insurance, which identified the "Named Insured" as "General De Gaulle Meat Market, Mrs. Debbie Wolfe".

2

(*Id.*) (citing Pla. Exh. 7). Alabdalle alleges that Galland General Agency was notified of the EREM sale, which resulted in changes to the Markel policy.  On August 15, 2005, the Wolfes sold KDW to Haissam Jaber and Janeth Jaber.  (Pla. Exh. 8).

The Court notes that at the time in question, Evanston Insurance Company provided commercial general liability insurance to General De Gaulle Meat Market and Safa'a, Inc., Alabdalle's company, as agreed to in the lease between Alabdalle and the Wolfes.  (Rec. Doc. 37, Exh. 4).  The Evanston policy provided $250,000 in business property coverage for Alabdalle's contents located at 3001 General De Gaulle Boulevard.  (*Id.*)  In conjunction with claims arising from Hurricane Katrina, Alabdalle filed suit against Evanston arising out of this commercial property insurance policy.  (Rec. Doc. 37, Exh. 6).[2]

Alabdalle filed the instant action in the 19th Judicial District Court for the Parish of Baton Rouge.  Markel removed the action to the United States District Court for the Middle District of Louisiana on October 4, 2006.  (Rec. Doc. 1).  On January 8, 2007, Judge Tyson granted as unopposed the Motion to Transfer Venue to the Eastern District of Louisiana Pursuant to 28 U.S.C. 1404 filed by Markel.  (Rec. Doc. 1-7).

On January 22, 2008, Markel moved for partial summary judgment on the grounds that there is no genuine issue of material fact that Alabdalle is not a named insured on the policy of commercial property insurance at issue and that Alabdalle's claims against Markel should be

---

[2]On March 3, 2006, the Evanston Insurance Company issued the following endorsement: "IT IS HEREBY AGREED AND UNDERSTOOD THAT THE CAPTIONED POLICY IS HEREBY CANCELED IN IT'S [SIC] ENTIRETY DUE TO NON-PAYMENT TO THE FINANCE COMPANY."  (Rec. Doc. 37, Exh. 4) (emphasis in original).

dismissed as a matter of law.  (Rec. Doc. 37).

Plaintiff filed an opposition on January 29, 2008, in which he argued that Defendant's motion should be denied on the following grounds: (1) Alabdalle was a named insured because he was "General De Gaulle Meat Market;" and (2) the Markel Policy sufficiently identified Alabdalle as the named insured for his benefit and protection.  (Pla. Mem. in Opp. p. 3, 5).

In reply, Defendant argues that "Alabdalle's only argument in opposition to Markel's Motion for Summary Judgment is that the original owner of KDW Meats, LLC, Keith Wolfe, Sr., allegedly intended for Alabdalle to inheret the goodwill of the meat market and that somehow this intention makes Alabdalle an insured on a policy upon which Alabdalle does not appear in any capacity," which Defendant characterizes as "groundless."  (Def. Repl. Mem. p. 1).

This motion was set for hearing on February 6, 2008.  The Court granted Alabdalle's Motion to Continue Summary Judgment Under F.R.C.P. 56(f) (Rec. Doc. 40), thereby postponing the motion and providing Alabdalle twenty days to obtain affidavits, depositions, and/or responses to discovery in response to the motion.  (Rec. Doc. 50).

The Court held a status conference on February 25, 2008 in light of the Motion for Extension of Time to Comply with the Courts [sic] Order of February 12, 2008 (Rec. Doc. 57) filed by Alabdalle and the Motion to Dismiss Pursuant to FRCP 41(b) and FRCP 37(b) and Motion for Sanctions (Rec. Doc. 61) filed by Defendant.  Counsel also discussed the instant motion for partial summary judgment at the conference, and the Court provided new deadlines.

Complying with the Court's new deadlines, Alabdalle filed a supplemental memorandum in opposition (Rec. Doc. 68) on March 7, 2008, in which he framed the issue as whether the insurance

policy was reformed or whether the insurer waived its right to deny coverage.[3] (Pla. Supp. Mem. in Opp. p. 1). To support his position, Alabdalle argues as follows: (1) the named insurer was erroneously described on August 29, 2005; (2) the policy provided coverage for Alabdalle, EREM, and Crescent Coffee Café; (3) Markel voluntarily reformed the policy to provide coverage for Alabdalle, EREM, and Crescent Coffee Café; and (4) Markel has waived any right to deny Alabdalle's claim. (*Id.* at p. 4-5, 7-8). In addition, Alabdalle claims that reformation and waiver present subjective factual questions for a jury. (*Id.* at p. 10).

Markel filed a supplemental reply memorandum. (Rec. Doc. 70). Citing Plaintiff's supplemental opposition, Markel contends that it is undisputed that Alabdalle is not a named insured on the Markel policy and that the Markel policy was not obtained for Alabdalle's benefit. (Def. Supp. Repl. Mem. p. 3). Moreover, Markel asserts that Alabdalle has not submitted any evidence to support reformation and argues that Markel has not "voluntarily reformed" the policy. (*Id.* at p. 4, 7). Finally, Markel submits that waiver is inapplicable.

## II.   **DISCUSSION**

### A.   *Summary Judgment Standard*

Summary Judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," when viewed in the light

---

[3]Alabdalle did not pursue his previous argument – that he was an insured on the Markel policy because he possessed the goodwill of "General De Gaulle Meat Market" and consequently was "General De Gaulle Meat Market." Markel observed that "Alabdalle has abandoned his previous arguments in opposition to Markel's Motion and now claims he is entitled to double recovery under both the Evanston and Markel policies because the Markel policy should be reformed to include him." (Def. Supp. Repl. Mem. p. 2).

most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.* (citing *Anderson*, 477 U.S. at 248).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  *Id.* (citing Fed.R.Civ.P 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.  *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

### B.    Reformation

Defendant lists the parties to the Markel policy as follows: KDW Meats d/b/a General De Gaulle Meat Market and Crescent Coffee Café (Named Insured); Hibernia National Bank and EREM (named Mortgage Holders).  (Def. Repl. Mem. p. 4).  The policy does not identify any loss payees.  (*Id.*)  Neither Alabdalle nor his company, Safa'a, Inc., is a party to the Markel insurance contract.  (*Id.*) The owner of EREM confirms that the Markel policy was never intended to benefit Alabdalle.  (Rec. Doc. 37, Exh. 1, Affidavit of Rick Normand).

6

Alabdalle concedes that his "is not a name contained within the description of the 'Named Insured' on Markel's policy" and that "the insurance application was executed by the Wolfes to provide insurance for their benefit and protection." (Pla. Supp. Mem. in Opp. p. 4). However, Alabdalle argues that it is "obvious" that on the day of the loss, the "Named Insured" was not properly identified on the policy. (*Id.*) Alabdalle contends that he was an insured party and that the policy was reformed. (*Id.*)

### 1.    The Parties' Contentions

Defendant argues that the parties to the Markel policy never intended for Alabdalle to be covered by that policy. (Def. Repl. Mem. p. 4). According to Alabdalle, the "Named Insured" was not properly identified in the case, and the incorrect identification of a "Named Insured" is corrected by reformation of the policy. (Pla. Mem. in Opp. p. 5) (citing *Orillion v. Allstate Ins. Co.*, 690 So.2d 846, 850 (La. App. 1 Cir. 1997)).

### a.    Markel

Defendant cites Fifth Circuit precedent, holding that to establish reformation, the party seeking reformation must prove by clear and convincing evidence that the policy, as written, fails to reflect the intent of the parties, either (1) because of mutual error or mistake, or (2) because of a unilateral mistake by the insurer or his agent in drafting the agreement. *Bischoff v. State Farm Fire & Cas.* Co., No. 91-2075, 1992 WL 31344, *1 (E.D. La. Feb. 10, 1992) (Clement, J.); *Duhon v. Mobil Oil Corp.*, 12 F.3d 55, 58 (5th Cir. 1994) (citing *Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199 (5th Cir. 1990)). Reformation is an extraordinary remedy; as such, courts exercise this remedy with great caution. *Id.* (citing 43 AmJur.2d, Insurance, § 357). The Fifth Circuit instructs

7

that "[r]eformation is warranted only, however, to embody the parties' *mutual* intent; otherwise, the courts would, in effect, be rewriting the contract." *Motors Ins. Co.*, 917 F.2d at 203 (citing *Leitz v. Wentzell*, 461 So.2d 473, 476 (La. App. 5 Cir. 1984), *writ denied*, 462 So.2d 1267 (La. 1985); *Billiot v. Sentry Ins.*, 366 So.2d 1017 (La. App. 1 Cir. 1978), *writ denied*, 368 So.2d 125 (La. 1979); *Stacy v. Petty*, 362 So.2d 810 (La. App. 3 Cir. 1978); *Green v. SHRM Catering Inc.*, 710 F.Supp. 174 (W.D. La. 1987)) (emphasis in original).

### b.   Alabdalle

Rather than apply the legal standard articulated by the Fifth Circuit, Plaintiff cites the Louisiana Supreme Court in arguing that when the insurance agent is aware of a transfer of interest to another person but continues to carry the coverage in the name of the original insured, reformation extends to one not named as an insured in the policy.  (Pla. Supp. Mem. in Opp. p. 5-6) (citing *Bonadona v. Guccione*, 362 So.2d 740, 743 (La. 1978)).  Alabdalle quotes the Louisiana Supreme Court for the proposition that:

> Where an insurance policy is issued to cover certain risks of a named insured, if these risks are transferred to or assumed by another person who ***continues to pay the insurance premiums for their coverage***, the insurer is bound by the knowledge of its agent and is estopped to deny its liability or the reformation of its policy to cover such risks incurred by the other person, ***when it has accepted the payment of premiums from or for him knowing of the change or addition of insured expressly or impliedly intended*** (even though there has been no formal endorsement reflecting the change or addition of insured) ***at least in the absence of proof that the risks thus insured would be different in nature or substantially greater than those initially covered by the policy***.

(*Id.* at p. 6) (quoting *Bonadona*, 362 So.2d at 743) (emphasis added).

Applying these principles, Alabdalle argues that the risk of loss or property destruction was transferred to him when he purchased the inventory from the Wolfes, and that at the time of the

transfer, the insurance agent and insurance broker involved were aware of the change in ownership. (*Id.*)  Insurance premiums were paid[4] and accepted, although the identity of the Named Insured was not changed.   (*Id.*)   Further, Alabdalle contends that when EREM purchased the building, the insurance agent and insurance broker were aware of the purchase, a new premium was calculated, payments were accepted, and additional coverage was put into effect without any change to the identity of the "Named Insured."  (*Id.*)  Alabdalle asserts that "[g]iven that both were aware of the transfer of risk and didn't [sic] cancel the policy[,] it is obvious that they intended to insure the true owners of the property against the loss of risk."  (*Id.*)  Further, Alabdalle contends that Markel is bound by the actions of the agent and broker acting on its behalf.  (*Id.* at p. 7).

### 2.      *Law and Analysis*

The  parties  direct  the  Court  to  differing  legal  standards  in  support  of  their  respective positions regarding reformation.  Thus, as an initial matter, the Court must determine the appropriate burden of proof.

In *Samuels v. State Farm Mutual Automobile Insurance Co.*, the Louisiana Supreme Court explained the relationship between the two burdens of proof.  939 So.2d 1235, 1240 (La. 2006).  The court cited its previous decision, *Ferguson v. Belcher and Son*, in which the court indicated that "the burden is on the one seeking the reformation to prove the error, and he must carry said burden by clear, and the strongest possible proof."  *Id.* (quoting 230 La. 422, 88 So.2d 806 (1956)).  However, the Louisiana Supreme Court recognized that this requirement was modified in *Bonadona*, in which the court held that the clear and convincing evidence of mutual mistake was necessary only when

---

[4]Alabdalle does not state who paid the insurance premiums.

9

a party sought to prove that the insurer had insured a substantially different and greater risk than that expressed by the written policy. *Id.* (citing *Bonadona*, 362 So.2d 740).  Otherwise, "only the normal burden of proof by a preponderance of the evidence was required to reform a policy in a manner which did not substantially affect the risk assumed by the insurer."  *Id.* (citing *Bonadona*, 362 So.2d 740).

The Court could not find a Fifth Circuit decision which applies the preponderance of the evidence standard advocated by the Louisiana Supreme Court in *Bonadona*.  In *Motors Insurance Company*, the party urging reformation adduced no evidence; consequently, because applying a lower standard of proof would not change the result, the Fifth Circuit did not consider the applicability of *Bonadona* and like cases.  917 F.2d at 204-05.

However, the Court notes that the requirement of proof of mutual intent is a common thread in both standards.  As explained by Judge Clement, the *Bonadona* court found that the insurer erred by not changing the policy to reflect the obvious intent of the insured.  *Bischoff*, 1992 WL 31344, *1 n. 3 (citing *Bonadona*, 352 So.2d 740; *Cotton Bros. Baking v. Industrial Risk Insurers*, 774 F.Supp. 1009 (W.D. La. 1989)).  Thus, under either standard, to justify reformation, Alabdalle must prove that the parties to the insurance policy intended for Alabdalle to be insured under the policy. *Motors Ins. Co.*, 917 F.2d at 204.  As explained in detail below, Alabdalle has not produced competent evidence to support his claim that the parties' mutual intentions were not reflected in the Markel policy.

Alabdalle submits eleven exhibits in conjunction with his supplemental opposition.[5] Defendant addresses each in turn, arguing that the evidence,"shows a strong, clear and convincing intent by the parties to the Markel policy that Alabdalle was not to be covered by the Markel policy, but instead was to be covered by the Evanston policy that he procured for himself."  (Def. Supp. Repl. Mem. p. 5).  The Court notes that Alabdalle only refers to these documents in the factual background; he does not point to any exhibit specifically in his argument in support of reformation.

The Court has reviewed the exhibits and finds that Alabdalle has not presented sufficient evidence to support reformation.  Rather, the evidence tends to establish that the parties to the Markel policy intended for Alabdalle to be covered by a separate policy that he procured for himself, and not by the Markel policy.

Alabdalle is not a named insured, named mortgage holder, or loss payee on the Markel insurance policy, No. GGAPKG 2818.  In fact, Alabdalle admits to such in his Supplemental Memorandum in Opposition to Markel International Insurance Company, Limited's Motion for

-----

[5]Specifically, Alabdalle submits the following exhibits in opposition to Markel's Motion for Summary Judgment:

| | |
|---|---|
| Exhibit 1. | Markel Insurance Policy |
| Exhibit 2. | Application |
| Exhibit 3. | Keith Wolfe Deposition |
| Exhibit 4. | Debralee Wolfe Deposition |
| Exhibit 5. | Lease between KDW and Alabdalle |
| Exhibit 6. | Lease between EREM and KDW |
| Exhibit 7. | Evidence of Insurance |
| Exhibit 8. | Sale of KDW |
| Exhibit 9. | Gilbert Reports |
| Exhibit 10. | Checks to KDW/CCC, EREM, and Hibernia |
| Exhibit 11. | Checks payable to KDW/CCC |

Summary Judgment (Rec. Doc. 68).  In addition, the insurance application does not support Alabdalle's argument in favor of reformation.  On the application, General De Gaulle Meat Market is listed as the applicant and named insured.  (Pla. Exh. 2).  The "Policyholder/applicant" was Debralee Wolfe.  (*Id*.)  Alabdalle is not identified anywhere in the document.

In his deposition, Keith Wolfe stated that he never intended for Mohammed Alabdalle to be covered under any insurance policy he ever bought.  (Def. Exh. 1, Keith Wolfe depo., p. 37, lines 8-13).  Rather, in accordance with the lease, Alabdalle had his own insurance and Wolfe had his own insurance.  (*Id.* at p. 37, lines 15-20).  Similarly, Debralee Wolfe states in her deposition that when obtaining the policy in January 2004, there was no one else in the world that she would have thought would get money from the policy other than KDW Meats.  (Def. Exh. 2, Debralee Wolfe depo, p. 18 line 25 – p. 19 lines 1-4).

Exhibit 5 contains the Net Commercial Lease Agreement between KDW Meats, LLC and Mohammed Alabdalle, executed on February 23, 2005.[6]  Importantly, regarding liability and property damage, the lease provides that KDW and Alabdalle would each get their own insurance:

> Lessee shall at all times during the full terms of this lease . . . carry and maintain at its own cost and expense General Public Liability Insurance against claims for . . . property damage occurring on the leased premises, such insurance to afford protection to both lessor and lessee . . . lessor shall be named as an additional insured.

(Pla. Exh. 5, Lease p. 3).  In addition, for Fire and Extended Coverage, the lease reads in pertinent part:

---

[6]Alabdalle does not allege that Markel had knowledge of this lease, nor has he submitted any evidence to that effect.

> . . . lessee shall carry contents coverage in an amount equal to 100% of the full replacement cost . . . lessor shall be named as an additional loss payee . . . Lessee shall pay each month as additional rent one-twelfth of lessee's pro rata share of lessor's insurance premium attributable to the full insurable value of the improvements covered by this lease.

(*Id.*)  As such, Defendant submits that the express language of the lease "directly contradicts" any assertion that the parties intended for Alabdalle to be insured on the Markel policy.  (Def. Supp. Repl. Mem. p. 6).  The Court agrees.

Plaintiff's sixth exhibit is the lease between EREM and KDW, to which Alabdalle is not a party.  (Pla. Exh. 6).  This document does not support and is not relevant to support Alabdalle's reformation argument.

The Evidence of Commercial Property Insurance, effective June 28, 2005 through January 19, 2006, lists "General De Gaulle Meat Market, Mrs. Debbie Wolfe," as the Named Insured.  (Pla. Exh. 7).  Alabdalle is not identified or mentioned on the document.

Exhibit 8 evidences the sale and transfer of the Wolfes' membership interest in KDW to Haissam Jaber and Janeth Jaber on August 9, 2005.  (Pla. Exh. 8).  Alabdalle is not a party to the sale and is not mentioned in this document.  (*Id.*)  Moreover, Defendant notes that Alabdalle offered no evidence that the sale agreement was provided to Markel at the time the policy was procured. (Def. Supp. Repl. Mem. p. 6).

In addition, Alabdalle attached an independent adjuster's report of the alleged damage following Katrina.  (Pla. Exh. 9).  The Court agrees with Defendant's contention that because the adjuster was not involved in the procurement of the Markel policy and was not a party to the policy, his assessment and the contents of the report are not sufficient to reflect the intent of the parties.

13

(Def. Supp. Repl. Mem. p. 7).   Moreover, in reviewing the report, the Court notes the following statement: "the named insured is KDW Meat Market and Crescent Coffee Café and the Mortgagees are listed [as] Hibernia National Bank and EREM Investment LLC."  (Pla. Exh. 9, p. 1).

Alabdalle submitted copies of checks made out to KDW Meats, EREM, and Hibernia. (Pla. Exh. 10-11).  Alabdalle was not listed as a payee on any of the checks submitted.  (*Id.*)

These exhibits do not support reformation of the insurance policy, as they fail to demonstrate that the parties to the insurance policy mutually intended to include Alabdalle under the policy. Consequently, the Court finds that Alabdalle has failed to satisfy his burden in establishing reformation.

### C.     *"Voluntary" Reformation*

Similarly, Alabdalle has provided no evidence to support his contention that the policy was "voluntarily reformed."  Alabdalle makes the conclusory statement that he "believed he was insured under Markel's Policy, he was responsible for and made payments for the premiums in accordance with the lease, and had an insurable interest in the property described within the policy." (Pla. Supp. Mem. in Opp. p. 7-8).  In addition, Alabdalle makes the unsupported assertion that Markel knew he was operating General De Gaulle Meat Market.   (*Id.* at p. 8).  Alabdalle cites the policy's endorsement subsequent to EREM's acquisition of the structure, which he contends substantiates Markel's understanding of the existence and interest of himself, the Jabers, and EREM.  (*Id.*) However, the positions and interests of these individuals and entities were not identical under the policy and should not be treated as such.

EREM's status under the Markel policy is irrelevant in ascertaining Alabdalle's status.

14

Unlike Alabdalle, EREM was affirmatively added as a Mortgage Holder on the property coverage portion of the Markel policy, an action which according to the policy terms, afforded EREM the same rights as a Named Insured on the property coverage.  (Def. Supp. Repl. Mem. p. 8) (citing Section F(2) of the Building and Personal Property Coverage Form of Policy No. GGAPKG 2818). As such, EREM was entitled to share in the insurance proceeds like a Named Insured.  Neither Alabdalle nor his company was included or mentioned in the endorsement.

### D.    Waiver

Finally, Alabdalle argues that Markel has waived any right to deny Alabdalle's claim.  (Pla. Supp. Mem. in Opp. p. 8).  Specifically, Alabdalle charges: "Where an insurer has facts which would cause a reasonable person to inquire further, a duty of investigation is imposed and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered."  (*Id.* at p. 9).

The Court finds that the waiver doctrine is not applicable, as Alabdalle was not a party to the insurance contract.  Other courts have similarly found that non-parties are barred from urging the doctrine of waiver.  For example, in addressing the issue of whether the doctrines of waiver and estoppel apply to cases involving disputes between two insurers, Judge Barbier quoted the Louisiana Supreme Court in stating that: "[w]aiver principles are applied stringently to uphold the prohibition against conflicts of interests between the insurer and the insured."  *Chubb v. Custom Insurance Co. v. Burnett & Co., Inc.*, No. 04-0950, 2006 WL 1663820, *5 (E.D. La. June 15, 2006) (Barbier, J.) (quoting *Steptore v. Masco Construction Co., Inc.*, 643 So.2d 1213, 1216 (La. 1994)).  This principle is equally instructive in the present case, as Alabdalle is not an "insured" and, consequently, the

policy rationale behind the benefit of waiver does not extend to a person in his position.

Further, in *F.D.I.C. v. Duffy*, Judge Schwartz concluded that the benefits of waiver and estoppel can only be raised by parties to an insurance contract:

> "[s]ince only parties to the contract of insurance, or their privities, can claim the benefit of waiver or estoppel, parties who are strangers to the contract and not named therein as the insured have been held not entitled to assert, or claim the benefit of, waiver or estoppel against the insurance company so as to extend coverage of the policy to include their interests . . . ."

835 F.Supp. 307, 318 (E.D. La. 1993) (Schwartz, J.)(quoting 46 C.J.S. Sec. 788 (1993)).

Alabdalle's conclusory statements and unsupported allegations do not persuade the Court to find waiver applicable in the present case.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 37)** filed by defendant Markel International Insurance Company is **GRANTED**.

July 7, 2008

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

16